# EXHIBIT A

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
DIGITAL RECOGNITION NETWORK, INC.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
GUILLERMO MATA, individually and on behalf of all others similarly situated,

| |
|---|
| **FOR COURT USE ONLY**<br>*(SOLO PARA USO DE LA CORTE)* |
| **ELECTRONICALLY FILED**<br>Superior Court of California<br>County of San Diego<br>**05/26/2021** at 04:05:04 PM<br>Clerk of the Superior Court<br>By Vanessa Bahena, Deputy Clerk |

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law l brary, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*   Hall of Justice Courthouse
330 West Broadway
San Diego, California 92101

CASE N 37-2021-00023321-CU-MC-CTL

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Lily E. Hough, Edelson PC, 150 California Street, 18th Floor, San Francisco, California 94111. 415.212.9300

DATE: 05/27/2021
*(Fecha)*

Clerk, by  *Y. Bahena*  , Deputy
*(Secretario)*   V. Bahena   *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of (specify): DIGITAL RECOGNITION NETWORK, INC

under: ☒ CCP 416.10 (corporation)   ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
☐ other *(specify):*
4. ☒ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

Rafey Balabanian (SBN 315962)
rbalabanian@edelson.com
Lily Hough (SBN 315277)
lhough@edelson.com
Aaron Lawson (SBN 319306)
alawson@edelson.com
EDELSON PC
150 California Street, 18th Floor
San Francisco, California 94111
Tel: 415.212.9300
Fax: 415.373.9435

*Counsel for Plaintiff and the Putative Class*

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego
05/26/2021 at 04:05:04 PM
Clerk of the Superior Court
By Vanessa Bahena, Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SAN DIEGO, CENTRAL DISTRICT

| | |
|---|---|
| GUILLERMO MATA, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>DIGITAL RECOGNITION NETWORK, INC., a Delaware corporation,<br><br>*Defendant.* | Case No.: 37-2021-00023321-CU-MC-CTL<br><br>**CLASS ACTION COMPLAINT FOR**<br><br>**(1) Violation of Cal. Civ. Code § 1798.90.5 *et seq.*** |

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Guillermo Mata brings this Class Action Complaint and Demand for Jury Trial against Digital Recognition Network ("DRN") for its practice of using automated license plate recognition devices and collecting license plate information. Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief.

**NATURE OF THE ACTION**

1.      The automobile has become the primary mode of transportation in the United States. Each year, more than 250 million registered automobiles travel the public roads of the United States, including more than 15 million registered in California. Individuals use their cars to travel to

CLASS ACTION COMPLAINT                                          1

and from work, to visit their friends and family, and to carry out everyday tasks and chores.

2. Americans have a close relationship with their cars. For example, over 85% of all workers choose to commute in their cars rather than rely on public transportation. Americans also spend, on average, 8 hours and 22 minutes per week in their cars. Consequently, knowing an individual's car location can easily allow someone to pinpoint the individual's location and gain insight into where they work, where they live, who they associate with, where they shop, and even where they like to spend their free time.

3. Defendant DRN created a nationwide surveillance program that tracks vehicle's movements and, in turn, individuals' locations. DRN then stores all of the amassed information in a proprietary database and makes it available to anyone willing to pay for access to it.

4. The core of DRN's privately-owned surveillance network is its fleet of unmarked vehicles that patrol America's roadways, equipped with high-speed cameras that allow them to capture photos of license plates, together with the time and location data of the photographed vehicles. DRN then applies its proprietary algorithm to the data allowing it to make various predictions about where the vehicle (and, more importantly, the individual behind the wheel) is traveling and where the vehicle (and the driver) may be located at a certain point in time.

5. DRN's surveillance network is more capable than the human eye. DRN captures images of license plates caught in the view of its ReaperHD camera—even when the vehicles are tightly packed together in traffic, traveling at high speeds down the road, or parked innocuously in the owner's driveway. DRN's ReaperHD cameras are constantly scanning for license plates in their visual range—even utilizing night-vision technology to continue tracking vehicles when human eyes could not. Worse, because Defendant's cameras are mounted to moving vehicles, they are difficult to spot and nearly unavoidable.

6. In fact, Defendant claims that it has amassed more than 20 billion historical scans of license plates or approximately over 70 scans—including time and GPS data—for each registered vehicle in the country.

7. All the while, millions of guiltless and unsuspecting individuals are monitored and

CLASS ACTION COMPLAINT                              2

tracked while going about their daily lives—going to work, picking up groceries, and visiting friends and family—without the slightest inkling that any of this is happening. These individuals are not suspects of any investigations, not part of any state or federal watchlists, and not subjects of any legitimate government surveillance programs. Nor do they have any notice that they are under constant surveillance by DRN's vast network. DRN's surveillance program is impudently indifferent to individuals' privacy and civil liberties and fails to give the public any meaningful warning about its conduct, in violation of California law.

8. Plaintiff Mata is one of millions of individuals who has fallen victim to DRN's pervasive surveillance network. DRN tracked Mata's vehicle, thus gaining access to his home and work address and other sensitive information such as the time he typically leaves and comes home and where he likes to spend his free time. Defendant DRN has also amassed similar information on the putative Class members. This lawsuit seeks to put an end to DRN's portentous surveillance tactics and to hold the company accountable for disparaging the privacy rights of California citizens.

**PARTIES**

9. Plaintiff Guillermo Mata is a natural person and citizen of the State of California.

10. Defendant Digital Recognition Network, Inc., is a corporation organized and existing under the laws of Delaware with its principal place of business located at 4150 International Plaza, Suite #800, Fort Worth, Texas 76109.

**JURISDICTION AND VENUE**

11. This Court has subject matter jurisdiction over this action pursuant to Article VI, Section 10 of the California Constitution.

12. This Court has personal jurisdiction over Defendant DRN because it has conducted and continues to conduct significant business within this State related to the conduct described in this Complaint, and caused significant effects in this State through the conduct described in this Complaint, both as to its activities within this State and elsewhere.

13. Venue is proper in this Court under Cal. Code Civ. P. § 395(a) because Plaintiff has

CLASS ACTION COMPLAINT                              3

designated San Diego Superior Court as the venue for this action.

## COMMON FACTUAL ALLEGATIONS

### I.    The California License Plate Recognition Law

14.    In 2016, the California legislature regulated and restrained the use of automatic license plate readers ("ALPR") and the sharing of data they capture, Cal. Civ. Code § 1798.90.5 *et seq.* In enacting the new ALPR law, the California legislature noted various privacy concerns about the use of this technology:

> The collection of a license plate number, location, and time stamp over multiple time points can identify not only a person's exact whereabouts but also their pattern of movement. Unlike other types of personal information that are covered by existing law, civilians are not always aware when their ALPR data is being collected. One does not even need to be driving to be subject to ALPR technology: A car parked on the side of the road can be scanned by an ALPR system. This bill will put in place minimal privacy protections by requiring the establishment of privacy and usage protection policies for ALPR operators and end users.[1]

15.    To achieve this goal, the ALPR law mandates that ALPR operators and end users, among other things, comply with three basic requirements:

i.    *The Security Requirement:* ALPR operators and end users must "maintain reasonable security procedures and practices, including operational, administrative, technical, and physical safeguards, to protect ALPR information from unauthorized access, destruction, use, modification, or disclosure." Cal Civ. Code § 1798.90.51(a); *id.* §1798.90.53(a).

ii.    *The Privacy Requirement:* ALPR operators and end users must "implement a usage and privacy policy in order to ensure that the collection, use, maintenance, sharing, and dissemination of ALPR information is consistent with respect for individuals' privacy and civil liberties." *Id.* § 1798.90.51(b)(1); *id.* § 1798.90.53(b)(1).

iii.    *The Notice Requirement:* ALPR operators and end users must post a usage and privacy policy "conspicuously" on their website and include the following information:

---

[1]    Sen. Rules Com., Off. of Sen. Floor Analyses, Rep. on Sen. Bill No. 34 ( 2015-2016 Reg.) Sept. 03, 2015, p. 5, *available at* https://bit.ly/3hSvw2t.

CLASS ACTION COMPLAINT                           4

(a)     The authorized purposes for using the ALPR system and collecting ALPR information.

(b)     A description of the job title or other designation of the employees and independent contractors who are authorized to use or access the ALPR system, or to collect ALPR information. The policy shall identify the training requirements necessary for those authorized employees and independent contractors.

(c)     A description of how the ALPR system will be monitored to ensure the security of the information and compliance with applicable privacy laws.

(d)     The purposes of, process for, and restrictions on, the sale, sharing, or transfer of ALPR information to other persons.

(e)     The title of the official custodian, or owner, of the ALPR system responsible for implementing this section.

(f)     A description of the reasonable measures that will be used to ensure the accuracy of ALPR information and correct data errors.

(g)     The length of time ALPR information will be retained, and the process the ALPR operator will utilize to determine if and when to destroy retained ALPR information. *Id.* § 1798.90.51(b)(1); *id.* § 1798.90.53(b)(1).

16.     Furthermore, ALPR operators have two additional requirements to ensure consumer privacy and unauthorized access.

i.     *The Audit Requirement.* ALPR operators must maintain a record of the times their ALPR system is accessed, whether by the operators, its employees, or an end user. *Id.* § 1798.90.52(a). The audit trail must note the date and time of the query, the data that was queried, who queried it, and the purpose of the query. *Id.* § 1798.90.52(a)(1)-(4).

ii.     *The Proper Use Requirement.* ALPR operators must also "require that ALPR information only be used for the authorized purposes described in the usage and privacy policy . . ." *Id.* §1798.90.52(b).

17.     An individual harmed by this statute may bring a civil suit and recover 1) actual

CLASS ACTION COMPLAINT                    5

damages, but not less than liquidated damages in the amount of $2,500, 2) punitive damages upon proof of willful or reckless disregard of the law, 3) reasonable attorney's fees and other litigation costs reasonably incurred, and 4) other preliminary and equitable relief as the court determines to be appropriate. *Id.* §1798.90.54(b).

**II.    DRN Collects ALPR Data from Unsuspecting California Residents**

18.    Defendant DRN seeks to provide its customers real-time vehicle location data. DRN accomplishes this through its use of automatic license plate reader technology. DRN claims that it has amassed data on over 20 *billion* vehicle sightings.

19.    Indeed, DRN uses vehicle-mounted ALPR cameras that take photographs of vehicles and their license plate numbers. *See* <u>Figure 1.</u> DRN also records the camera's location including the time and date of the photograph. *See* <u>Figure 2.</u>



**(Figure 1)**



**(Figure 2)**

CLASS ACTION COMPLAINT                                      6

20.     DRN uses ALPR camera hardware it calls ReaperHD. ReaperHD conducts "high-volume license plate scanning" capable of "multi-lane image capture" that performs "at all times of day—or night." *See* Figure 3.



**(Figure 3)**

21.     DRN's automatic license plate readers deployed throughout the nation, including the state of California, pose serious concerns to individuals. License plate data, together with date/time, and GPS coordinates, can reveal a vehicle's historical travel. After applying algorithms to the data, such information can reveal an individual's travel patterns and even predict where an individual may be located in the future. Indeed, DRN states that "our platform can build a full, historical story on a vehicle and owner. This can produce a better address faster than using public records only."

22.     DRN is not shy about the information it derives from ALPR data. According to its website "DRN's realternative data – license plate recognition data paired with our powerful, exclusive analytics platform – helps build the full vehicle stories our users need to solve their portfolio management, collections, recovery and fraud challenges."

23.     DRN pairs its ALPR technology with a number of other systems that magnify the invasiveness and value of the collected information. DRN employs "Vehicle Tagging," a system that allows clients to target communications to individual drivers, "Picture Proof" a system that captures vehicle photos from multiple angles to display how a vehicle is being used, "Radius

CLASS ACTION COMPLAINT                                7

Response," a system that notifies clients if a particular vehicle is sighted outside of particular areas, and "Active Duty Alerts," a system that monitors drivers' active duty military status, notifying DRN's clients the moment a servicemembers' status changes from active duty so their vehicles may be repossessed.

24.     DRN's so-called vehicle "stories" that contain location and time data reveal sensitive information that individuals may not wish to share (or allow anyone to monetize). To illustrate, DRN can reveal whether an individual has recently visited an abortion clinic, a cancer treatment clinic, a religious center, or an LGBT community center, thus giving insight into one's health and medical history, religious beliefs, and sexual orientation. DRN can even potentially reveal whether an individual is actively searching for jobs if an individual's vehicle was found outside a competing company or at a recruiting agency.

25.     DRN's database can also endanger some individuals when in the wrong hands. For instance, DRN's license plate database can reveal an individual's location and their travel patterns, which an abusive spouse or ex can obtain and use to find the location of an individual—even if they participate in an address confidentiality program. DRN's predictive technology allows a malicious individual to predict exactly where their victim could be found at a certain point in time.

26.     Worst of all, nearly every California resident is a victim of DRN's invasive practices. DRN gathers ALPR data indiscriminately—collecting information on millions of ordinary people who are neither suspects of any criminal investigations nor members of any watch list. That means ordinary citizens' whereabouts are continuously being collected and analyzed by an unknown third party.

27.     Victims of DRN's license plate scanning do not know they are part of its widespread and unchecked surveillance network. Indeed, California residents, and the public in general, are completely unaware of DRN's existence—let alone its clandestine operation of patrolling streets with unmarked vehicles equipped with ALPR technology.

28.     The purpose of DRN's product is obvious: to collect license plate data together with date/time and GPS coordinates, tracking individuals as they go on about their day and, most

CLASS ACTION COMPLAINT                              8

importantly, to monetize this data. In its efforts to build an expansive (and lucrative) database of personal location information, DRN puts its own profits over the individual privacy and civil liberties of its unsuspecting subjects.

29.   Currently, DRN claims to have over 1,000 clients who rely on and pay for DRN data. Those clients belong to various industries such as lending, collections, and insurance, among others.

30.   While DRN maintains a written "privacy policy" on its website in order to maintain the appearance of adhering to the law, the company's actual policies reflect little concern for individuals' privacy and civil liberties. The company's written policy, for instance, describes the authorized purposes for using the ALPR system and collecting ALPR information (which the law requires), indicating that customers may use its ALPR system "to identify or ascertain the location of a specific vehicle under circumstances when there is a legitimate commercial interest." But this vague and undefined purpose does little to adequately disclose the circumstances in which DRN authorizes the collection and use of its ALPR system, let alone to ensure that those practices are consistent with respect for individuals' privacy and civil liberties, as the law requires. Cal. Civ. Code §§ 1798.90.51(b)(1) and 1798.90.53(b)(1). In fact, DRN doesn't even believe individuals have privacy rights in the tracking of their vehicles in the first place. On its website, DRN states that there is "not a privacy concern related to the data [it] collect[s]."

31.   Moreover, DRN does not even require its customers to stay within the bounds of its broadly defined usage policy, as the law also requires. *Id.* § 1798.90.52(b). Despite only authorizing the use of its ALPR system for the purpose of "identify[ing] or ascertain[ing] the location of a specific vehicle," DRN encourages customers to use its database to track *individuals* and not just the location of vehicles.

32.   For example, DRN touts that its database can be used to verify addresses for use in mailing campaigns: "[u]sing DRN to validate/invalidate addresses for mailing campaigns can provide even larger cost saving benefits." This application has nothing to do with locating or identifying a vehicle.

CLASS ACTION COMPLAINT                                          9

33.     DRN's database also allows credit card companies and other lenders of unsecured debt to keep tabs on their customers. According to DRN, "[n]ow, we're showing that [License Plate Recognition technology] can be just as effective in the unsecured debt market, which is primarily credit cards, personal loans and student loans." DRN hopes that its ALPR database will help "find debtors so they can collect on the debt or, in some cases, start the timeline to file suit."

34.     In short, DRN's written policy does little to ensure that the collection, use, maintenance, sharing, and dissemination of ALPR information is consistent with respect for individuals' privacy and civil liberties. The real purpose of DRN's "privacy policy" is to pay lip service to privacy laws without having any intention of actually complying with them.

35.     Further, aside from publishing a superficial "privacy policy" to its website, DRN takes no additional steps to ensure that the collection, use, maintenance, sharing, and dissemination of its ALPR information is consistent with respect for individuals' privacy and civil liberties. Instead, the company offers the disclaimer that it "is not aware of any individual privacy interest applicable to the anonymous LPR data contained in the system," and suggests that it maintains usage and periodic audit logs only "because the company considers LPR data a valuable asset of the company." However, the company's advertised uses of the data suggests that it is anything but anonymous. In any case, DRN cannot rely on this self-serving attempt to recharacterize the highly sensitive nature of ALPR data, in contradiction of findings by the California Supreme Court[2] and the State Legislature, in order to circumvent its duties under the law.

36.     Finally, DRN fails to make its collection and usage practices available to the public in any meaningful way. The company has not taken any steps to inform the subjects of its surveillance about its practices, much less to make the public generally aware of its surveillance program. At most, DRN has published an indifferent privacy policy to its website, but as explained above, the policy hardly informs the public about the collection and use of their ALPR data, and the

---

[2]     *See Am. C.L. Union Found. v. Superior Ct.* (2017) 3 Cal. 5th 1032, 1044 [221 Cal.Rptr.3d 832, 400 P.3d 432].

CLASS ACTION COMPLAINT                    10

policy itself is not posted conspicuously on DRN's website, as the law requires. Cal. Civ. Code § 1798.90.51(b)(1). Even if a California consumer were to somehow discover that DRN collected their license plate data and were to visit DRN's website, DRN hides its usage and privacy policy at the bottom of its website in small dark font that is hardly visible against a dark background.

## FACTS SPECIFIC TO PLAINTIFF MATA

37.    Plaintiff Mata values his privacy and takes various measures to protect against revealing his personal information.

38.    Unbeknownst to Mata, DRN's ALPR cameras captured Mata's license plate numbers and his vehicle's location. The collection of his vehicle's location and his license plate data allowed DRN to identify Mata's former employer, where he spends his time after work, the school his family member attended, and the stores him and his family members frequent.

39.    At the time of DRN's collection of Mata's license plate data and location information, Mata was not aware of DRN's conduct, and, as such, Mata could not have found and reviewed DRN's usage and privacy policy.

40.    Furthermore, Mata is concerned to whom and for what reasons DRN may have disclosed his sensitive license plate data together with his vehicle's location. Worst of all, Mata is concerned how this information can be misused.

## CLASS ACTION ALLEGATIONS

41.    **Class Definition**: Plaintiff Guillermo Mata brings this action pursuant to the California Code of Civil Procedure § 382 on behalf of himself and a Class of similarly situated individuals defined as follows:

> All persons in the State of California whose license plate data was collected by Defendant using an automatic license plate reader.

> Excluded from the Class are: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or their parents have a controlling interest and its officers and directors; (3) persons who properly execute and file a timely request for exclusion from

CLASS ACTION COMPLAINT                    11

the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

42.     **Numerosity**: The exact number of Class members is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant has photographed the license plates and time-stamped geolocation data of millions of consumers who fall into the definition of the Class. Class members can be identified through Defendant's records.

43.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the putative Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

      (a)    Whether Defendant complies with the requirements set forth by Cal. Civ. Code § 1798.90.51;

      (b)    Whether Defendant complies with the requirements set forth by Cal. Civ. Code § 1798.90.52; and

      (c)    Whether Defendant complies with the requirements set forth in Cal. Civ. Code § 1798.90.53.

44.     **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff's claims are representative of the claims of the other members of the Class. That is, Plaintiff and the Class members sustained damages as a result of Defendant's conduct. Plaintiff also has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so. Neither Plaintiff nor her counsel has any interest adverse to the Class.

45.     **Predominance and Superiority**: Class proceedings are superior to all other

CLASS ACTION COMPLAINT                              12

available methods for the fair and efficient adjudication of this controversy, as joinder of all members of the Class is impracticable. Individual litigation would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

46.    Plaintiff reserves the right to revise the foregoing "Class Allegations" and "Class Definition" based on facts learned through additional investigation and in discovery.

## FIRST CAUSE OF ACTION
### Violation of Cal. Civ. Code § 1798.90.5 *et seq.*
### (On behalf of Plaintiff and the Class)

47.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

48.    Plaintiff Mata brings this count against DRN individually and on behalf of the class.

49.    Defendant DRN operates an ALPR system that collects photographs of license plate numbers, together with the location, time, and date of the Plaintiff's and the putative Class's vehicles.

50.    On information and belief, DRN is not a transportation agency acting subject to Cal. Streets & Highways Code § 31490.

51.    Accordingly, Defendant is an "ALPR operator" under Cal. Civ. Code § 1798.90.5(c) because it operates an ALPR system.

52.    In addition (or in the alternative), Defendant is an "ALPR end-user" under Cal. Civ. Code § 1798.90.5(a) because it accesses or uses an ALPR system.

53.    California law prohibits DRN from accessing or using ALPR information unless it complies with the Notice, Privacy, Security, Audit, and Proper-Use Requirements defined above.

54.    On information and belief, Defendant deliberately collected Plaintiff's and the putative Class's ALPR information and disclosed that information to its 1,000 clients allowing them to identify locations visited by Plaintiff and each putative Class member's vehicles.

CLASS ACTION COMPLAINT                          13

55. Defendant knew that ALPR data was protected under California law and that it had certain obligations under California's ALPR statute. Upon information and belief, Defendant knowingly collected, used, and shared Plaintiff's and the Class's ALPR data in violation of the law (and allowed, if not encouraged, its customers to do the same), while impersonating compliance on its website.

56. Defendant's conduct violates the Notice Requirement under Cal. Civ. Code §§ 1798.90.51(b)(1) & 53(b)(1) because the company does not make a meaningful usage and/or privacy policy available to the public, nor does it conspicuously post any information about usage and/or privacy on its website.

57. Defendant's conduct violates the Privacy Requirement under §§ 1798.90.51(b)(1) & 53(b)(1) because it does not implement a meaningful usage and privacy policy in order to ensure that its collection, use, maintenance, sharing, and dissemination of ALPR information is consistent with respect for individuals' privacy and civil liberties.

58. Defendant's conduct violates the Security Requirement under §§ 1798.90.51(a) & 53(a) because it expressly disclaims the highly sensitive nature and serious privacy implications of its ALPR data, and as a result fails to conduct the security procedures and practices reasonably necessary to protect such sensitive information from unauthorized access, destruction, use, modification, or disclosure.

59. Defendant's conduct violates the Proper-Use Requirement under § 1798.90.52(b) because it allows, and indeed encourages its customers to use its ALPR system for the unauthorized purpose of tracking and locating individuals.

60. Plaintiff and the Class have been harmed by Defendant's conduct because their private and sensitive personal information has been improperly collected and used without their notice or consent.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Guillermo Mata, individually and on behalf of the Class, prays for the following relief:

CLASS ACTION COMPLAINT                    14

(a)     An order certifying the Class as defined above, appointing Plaintiff Mata as the representative of the Class, and appointing his counsel as Class Counsel;

(b)     An order declaring that Defendant's actions, as set out above, violate Cal. Civ. Code § 1798.90.5 *et seq.*

(c)     An injunction requiring Defendant to cease all unlawful activities;

(d)     An award of liquidated damages, punitive damages, costs, and attorneys' fees;

**(e)**     Such other and further relief that the Court deems reasonable and just.

**JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully submitted,

**GUILLERMO MATA**, individually and on behalf of all others similarly situated,

Dated: May 26, 2021

By: /s/ Lily E. Hough
*One of Plaintiff's Attorneys*

Rafey Balabanian (SBN 315962)
rbalabanian@edelson.com
Lily Hough (SBN 315277)
lhough@edelson.com
Aaron Lawson (SBN 319306)
alawson@edelson.com
EDELSON PC
150 California Street, 18th Floor
San Francisco, California 94111
Tel: 415.212.9300
Fax: 415.373.9435

*Counsel for Plaintiff and the Putative Class*

CLASS ACTION COMPLAINT                    15



## SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION

CASE NUMBER: 37-2021-00023321-CU-MC-CTL    CASE TITLE: Mata vs. Digital Recognition Network Inc [E-FILE]

**NOTICE: All plaintiffs/cross-complainants in a general civil case are required to serve a copy of the following three forms on each defendant/cross-defendant, together with the complaint/cross-complaint:**
> **(1) this Alternative Dispute Resolution (ADR) Information form (SDSC form #CIV-730),**
> **(2) the Stipulation to Use Alternative Dispute Resolution (ADR) form (SDSC form #CIV-359), _and_**
> **(3) the Notice of Case Assignment form (SDSC form #CIV-721).**

Most civil disputes are resolved without filing a lawsuit, and most civil lawsuits are resolved without a trial. The courts, community organizations, and private providers offer a variety of Alternative Dispute Resolution (ADR) processes to help people resolve disputes without a trial. The San Diego Superior Court expects that litigants will utilize some form of ADR as a mechanism for case settlement before trial, and it may be beneficial to do this early in the case.

Below is some information about the potential advantages and disadvantages of ADR, the most common types of ADR, and how to find a local ADR program or neutral. A form for agreeing to use ADR is attached (SDSC form #CIV-359).

### Potential Advantages and Disadvantages of ADR
ADR may have a variety of advantages or disadvantages over a trial, depending on the type of ADR process used and the particular case:

| Potential Advantages | Potential Disadvantages |
| --- | --- |
| • Saves time | • May take more time and money if ADR does not resolve the dispute |
| • Saves money | |
| • Gives parties more control over the dispute resolution process and outcome | • Procedures to learn about the other side's case (discovery), jury trial, appeal, and other court protections may be limited or unavailable |
| • Preserves or improves relationships | |

### Most Common Types of ADR
You can read more information about these ADR processes and watch videos that demonstrate them on the court's ADR webpage at http://www.sdcourt.ca.gov/adr.

**Mediation:** A neutral person called a "mediator" helps the parties communicate in an effective and constructive manner so they can try to settle their dispute. The mediator does not decide the outcome, but helps the parties to do so. Mediation is usually confidential, and may be particularly useful when parties want or need to have an ongoing relationship, such as in disputes between family members, neighbors, co-workers, or business partners, or when parties want to discuss non-legal concerns or creative resolutions that could not be ordered at a trial.

**Settlement Conference:** A judge or another neutral person called a "settlement officer" helps the parties to understand the strengths and weaknesses of their case and to discuss settlement. The judge or settlement officer does not make a decision in the case but helps the parties to negotiate a settlement. Settlement conferences may be particularly helpful when the parties have very different ideas about the likely outcome of a trial and would like an experienced neutral to help guide them toward a resolution.

**Arbitration:** A neutral person called an "arbitrator" considers arguments and evidence presented by each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are usually relaxed. If the parties agree to binding arbitration, they waive their right to a trial and agree to accept the arbitrator's decision as final. With nonbinding arbitration, any party may reject the arbitrator's decision and request a trial. Arbitration may be appropriate when the parties want another person to decide the outcome of their dispute but would like to avoid the formality, time, and expense of a trial.

**Other ADR Processes:**  There are several other types of ADR which are not offered through the court but which may be obtained privately, including neutral evaluation, conciliation, fact finding, mini-trials, and summary jury trials. Sometimes parties will try a combination of ADR processes. The important thing is to try to find the type or types of ADR that are most likely to resolve your dispute.  Be sure to learn about the rules of any ADR program and the qualifications of any neutral you are considering, and about their fees.

## Local ADR Programs for Civil Cases

**Mediation:**  The San Diego Superior Court maintains a Civil Mediation Panel of approved mediators who have met certain minimum qualifications and have agreed to charge $150 per hour for each of the first two (2) hours of mediation and their regular hourly rate thereafter in court-referred mediations.

On-line mediator search and selection:  Go to the court's ADR webpage at www.sdcourt.ca.gov/adr and click on the "Mediator Search" to review individual mediator profiles containing detailed information about each mediator including their dispute resolution training, relevant experience, ADR specialty, education and employment history, mediation style, and fees and to submit an on-line Mediator Selection Form (SDSC form #CIV-005).  The Civil Mediation Panel List, the Available Mediator List, individual Mediator Profiles, and Mediator Selection Form (CIV-005) can also be printed from the court's ADR webpage and are available at the Mediation Program Office or Civil Business Office at each court location.

**Settlement Conference:**  The judge may order your case to a mandatory settlement conference, or voluntary settlement conferences may be requested from the court if the parties certify that: (1) settlement negotiations between the parties have been pursued, demands and offers have been tendered in good faith, and resolution has failed; (2) a judicially supervised settlement conference presents a substantial opportunity for settlement; and (3) the case has developed to a point where all parties are legally and factually prepared to present the issues for settlement consideration and further discovery for settlement purposes is not required. Refer to SDSC Local Rule 2.2.1 for more information. To schedule a settlement conference, contact the department to which your case is assigned.

**Arbitration:**  The San Diego Superior Court maintains a panel of approved judicial arbitrators who have practiced law for a minimum of five years and who have a certain amount of trial and/or arbitration experience.  Refer to SDSC Local Rules Division II, Chapter III and Code Civ. Proc. § 1141.10 et seq or contact the Arbitration Program Office at (619) 450-7300 for more information.

More information about court-connected ADR: Visit the court's ADR webpage at www.sdcourt.ca.gov/adr or contact the court's Mediation/Arbitration Office at (619) 450-7300.

**Dispute Resolution Programs Act (DRPA) funded ADR Programs:**  The following community dispute resolution programs are funded under DRPA (Bus. and Prof. Code §§ 465 et seq.):
- In Central, East, and South San Diego County, contact the National Conflict Resolution Center (NCRC) at www.ncrconline.com or (619) 238-2400.
- In North San Diego County, contact North County Lifeline, Inc. at www.nclifeline.org or (760) 726-4900.

**Private ADR:**  To find a private ADR program or neutral, search the Internet, your local telephone or business directory, or legal newspaper for dispute resolution, mediation, settlement, or arbitration services.

## Legal Representation and Advice

To participate effectively in ADR, it is generally important to understand your legal rights and responsibilities and the likely outcomes if you went to trial. ADR neutrals are not allowed to represent or to give legal advice to the participants in the ADR process. If you do not already have an attorney, the California State Bar or your local County Bar Association can assist you in finding an attorney. Information about obtaining free and low cost legal assistance is also available on the California courts website at *www.courtinfo.ca.gov/selfhelp/lowcost*.

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

| | |
|---|---|
| STREET ADDRESS: | 330 W Broadway |
| MAILING ADDRESS: | 330 W Broadway |
| CITY AND ZIP CODE: | San Diego, CA 92101-3827 |
| DIVISION: | Central |
| TELEPHONE NUMBER: | (619) 450-7073 |

PLAINTIFF(S) / PETITIONER(S):    Guillermo Mata

DEFENDANT(S) / RESPONDENT(S):    Digital Recognition Network Inc

MATA VS. DIGITAL RECOGNITION NETWORK INC [E-FILE]

| NOTICE OF CASE ASSIGNMENT AND CASE MANAGEMENT CONFERENCE (CIVIL) | CASE NUMBER: 37-2021-00023321-CU-MC-CTL |
|---|---|

## CASE ASSIGNED FOR ALL PURPOSES TO:

Judge:  Joel R. Wohlfeil                                          Department: C-73

## COMPLAINT/PETITION FILED: 05/26/2021

| TYPE OF HEARING SCHEDULED | DATE | TIME | DEPT | JUDGE |
|---|---|---|---|---|
| Civil Case Management Conference | 10/29/2021 | 01:30 pm | C-73 | Joel R. Wohlfeil |

**Due to the COVID-19 pandemic, all Case Management Conferences (CMCs) are being conducted virtually unless there is a court order stating otherwise.** Prior to the hearing date, visit the "virtual hearings" page for the most current instructions on how to appear for the applicable case-type/department on the court's website at www.sdcourt.ca.gov.

A Case Management Statement (JC Form #CM-110) must be completed by counsel for all parties and by all self-represented litigants and timely filed with the court at least 15 days prior to the initial CMC. (San Diego Superior Court (SDSC) Local Rules, rule 2.1.9; Cal. Rules of Court, rule 3.725).

All counsel of record and self-represented litigants must appear at the CMC, be familiar with the case, and be fully prepared to participate effectively in the hearing, including discussions of Alternative Dispute Resolution (ADR) options.

It is the duty of each plaintiff (and cross-complainant) to serve a copy of this Notice of Case Assignment and Case Management Conference (SDSC Form #CIV-721) with the complaint (and cross-complaint), the Alternative Dispute Resolution (ADR) Information Form (SDSC Form # CIV-730), a Stipulation to Use Alternative Dispute Resolution (ADR) (SDSC Form # CIV-359), and other documents on all parties to the action as set out in SDSC Local Rules, rule 2.1.5.

**TIME FOR SERVICE AND RESPONSE:** The following rules apply to civil cases except for collections cases under California Rules of Court, rule 3.740(a), unlawful detainer actions, proceedings under the Family Code, and other proceedings for which different service requirements are prescribed by law (Cal. Rules of Court, rule 3.110; SDSC Local Rules, rule 2.1.5):
- **Service:** The complaint must be served on all named defendants, and proof of service filed with the court within 60 days after filing the complaint. An amended complaint adding a defendant must be served on the added defendant and proof of service filed within 30 days after filing of the amended complaint. A cross-complaint against a party who has appeared in the action must be accompanied by proof of service on that party at the time it is filed. If it adds a new party, the cross-complaint must be served on all parties and proof of service on the new party must be filed within 30 days of the filing of the cross-complaint.
- **Defendant's appearance:** Unless a special appearance is made, each defendant served must generally appear (as defined in Code of Civ. Proc. § 1014) within 30 days of service of the complaint/cross-complaint.
- **Extensions:** The parties may stipulate without leave of court to one 15-day extension beyond the 30-day time period prescribed for the response after service of the initial complaint (SDSC Local Rules, rule 2.1.6). If a party fails to serve and file pleadings as required under this rule, and has not obtained an order extending time to serve its pleadings, the court may issue an order to show cause why sanctions shall not be imposed.

**JURY FEES:** In order to preserve the right to a jury trial, one party for each side demanding a jury trial shall pay an advance jury fee in the amount of one hundred fifty dollars ($150) on or before the date scheduled for the initial case management conference in the action.

**COURT REPORTERS:** Official Court Reporters are not normally available in civil matters, but may be requested in certain situations no later than 10 days before the hearing date. See SDSC Local Rules, rule 1.2.3 and Policy Regarding Normal Availability and Unavailability of Official Court Reporters (SDSC Form #ADM-317) for further information.

**ALTERNATIVE DISPUTE RESOLUTION (ADR):** The court discourages any unnecessary delay in civil actions; therefore, continuances are discouraged and timely resolution of all actions, including submitting to any form of ADR is encouraged. The court encourages and expects the parties to consider using ADR options prior to the CMC. The use of ADR will be discussed at the CMC. Prior to the CMC, parties stipulating to the ADR process may file the Stipulation to Use Alternative Dispute Resolution (SDSC Form #CIV-359).

| | | |
|---|---|---|
| SDSC CIV-721 (Rev. 04-21) | NOTICE OF CASE ASSIGNMENT AND CASE MANAGEMENT CONFERENCE (CIVIL) | Page: 1 |

EXHIBIT A
PAGE 19

## NOTICE OF E-FILING REQUIREMENTS
## AND IMAGED DOCUMENTS

Effective April 15, 2021, e-filing is required for attorneys in represented cases in all limited and unlimited civil cases, pursuant to the San Diego Superior Court General Order: In Re Procedures Regarding Electronically Imaged Court Records, Electronic Filing and Access to Electronic Court Records in Civil and Probate Cases. Additionally, you are encouraged to review CIV-409 for a listing of documents that are not eligible for e-filing. E-filing is also encouraged, but not mandated, for self-represented litigants, unless otherwise ordered by the court. All e-filers are required to comply with the e-filing requirements set forth in Electronic Filing Requirements (Civil) (SDSC Form #CIV-409) and Cal. Rules of Court, rules 2.250-2.261.

All Civil cases are assigned to departments that are part of the court's "Imaging Program." This means that original documents filed with the court will be imaged, held for 30 days, and then destroyed, with the exception of those original documents the court is statutorily required to maintain. The electronic copy of the filed document(s) will be the official court record, pursuant to Government Code § 68150. Thus, original documents should not be attached to pleadings filed with the San Diego Superior Court, unless it is a document for which the law requires an original be filed. Any original documents necessary for a motion hearing or trial shall be lodged in advance of the hearing pursuant to California Rules of Court, rule 3.1302(b).

It is the duty of each plaintiff, cross-complainant, or petitioner to serve a copy of this Notice of Case Assignment and Case Management Conference (Civil) (SDSC Form #CIV-721) with the complaint, cross-complaint, or petition on all parties to the action.

On all pleadings filed after the initial case originating filing, all parties must, to the extent it is feasible to do so, place the words "IMAGED FILE" in all caps immediately under the title of the pleading on all subsequent pleadings filed in the action.

The official court file will be electronic and accessible at one of the kiosks located in the Civil Business Office and may be found on the court's website at www.sdcourt.ca.gov.

**Page: 2**

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | FOR COURT USE ONLY |
|---|---|
| STREET ADDRESS:    330 West Broadway | |
| MAILING ADDRESS:    330 West Broadway | |
| CITY, STATE, & ZIP CODE: San Diego, CA 92101-3827 | |
| BRANCH NAME:    Central | |

| PLAINTIFF(S):    Guillermo Mata |
|---|
| DEFENDANT(S): Digital Recognition Network Inc |
| SHORT TITLE:    MATA VS. DIGITAL RECOGNITION NETWORK INC [E-FILE] |

| STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (ADR) | CASE NUMBER:<br>37-2021-00023321-CU-MC-CTL |
|---|---|

Judge: Joel R. Wohlfeil                                         Department: C-73

The parties and their attorneys stipulate that the matter is at issue and the claims in this action shall be submitted to the following alternative dispute resolution (ADR) process.  Selection of any of these options will not delay any case management timelines.

☐  Mediation (court-connected)                    ☐  Non-binding private arbitration

☐  Mediation (private)                              ☐  Binding private arbitration

☐  Voluntary settlement conference (private)        ☐  Non-binding judicial arbitration (discovery until 15 days before trial)

☐  Neutral evaluation (private)                     ☐  Non-binding judicial arbitration (discovery until 30 days before trial)

☐  Other (specify e.g., private mini-trial, private judge, etc.): _____

_____

It is also stipulated that the following shall serve as arbitrator, mediator or other neutral: (Name) _____

_____

_____

Alternate neutral (for court Civil Mediation Program and arbitration only): _____

Date: _____        Date: _____

_____            _____
Name of Plaintiff                              Name of Defendant

_____            _____
Signature                                      Signature

_____            _____
Name of Plaintiff's Attorney                   Name of Defendant's Attorney

_____            _____
Signature                                      Signature

If there are more parties and/or attorneys, please attach additional completed and fully executed sheets.

It is the duty of the parties to notify the court of any settlement pursuant to Cal. Rules of Court, rule 3.1385.  Upon notification of the settlement, the court will place this matter on a 45-day dismissal calendar.

No new parties may be added without leave of court.

**IT IS SO ORDERED.**

_____
Dated:  05/27/2021                                JUDGE OF THE SUPERIOR COURT

SDSC CIV-359 (Rev 12-10)      **STIPULATION TO USE OF ALTERNATIVE DISPUTE RESOLUTION**      Page: 1

EXHIBIT A
PAGE 21