# EXHIBIT 1

Rafey Balabanian (SBN 315962)
rbalabanian@edelson.com
Lily Hough (SBN 315277)
lhough@edelson.com
Aaron Lawson (SBN 319306)
alawson@edelson.com
EDELSON PC
150 California Street, 18th Floor
San Francisco, California 94111
Tel: 415.212.9300
Fax: 415.373.9435

*Counsel for Plaintiff and the Putative Class*

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego
05/26/2021 at 04:05:04 PM
Clerk of the Superior Court
By Vanessa Bahena, Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SAN DIEGO, CENTRAL DISTRICT

| | |
|---|---|
| GUILLERMO MATA, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>DIGITAL RECOGNITION NETWORK, INC., a Delaware corporation,<br><br>*Defendant.* | Case No.: 37-2021-00023321-CU-MC-CTL<br><br>**CLASS ACTION COMPLAINT FOR**<br><br>**(1) Violation of Cal. Civ. Code § 1798.90.5 *et seq.*** |

### CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Guillermo Mata brings this Class Action Complaint and Demand for Jury Trial against Digital Recognition Network ("DRN") for its practice of using automated license plate recognition devices and collecting license plate information. Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief.

### NATURE OF THE ACTION

1. The automobile has become the primary mode of transportation in the United States. Each year, more than 250 million registered automobiles travel the public roads of the United States, including more than 15 million registered in California. Individuals use their cars to travel to

CLASS ACTION COMPLAINT                    1

Exhibit 1
Page 1

and from work, to visit their friends and family, and to carry out everyday tasks and chores.

2.     Americans have a close relationship with their cars. For example, over 85% of all workers choose to commute in their cars rather than rely on public transportation. Americans also spend, on average, 8 hours and 22 minutes per week in their cars. Consequently, knowing an individual's car location can easily allow someone to pinpoint the individual's location and gain insight into where they work, where they live, who they associate with, where they shop, and even where they like to spend their free time.

3.     Defendant DRN created a nationwide surveillance program that tracks vehicle's movements and, in turn, individuals' locations. DRN then stores all of the amassed information in a proprietary database and makes it available to anyone willing to pay for access to it.

4.     The core of DRN's privately-owned surveillance network is its fleet of unmarked vehicles that patrol America's roadways, equipped with high-speed cameras that allow them to capture photos of license plates, together with the time and location data of the photographed vehicles. DRN then applies its proprietary algorithm to the data allowing it to make various predictions about where the vehicle (and, more importantly, the individual behind the wheel) is traveling and where the vehicle (and the driver) may be located at a certain point in time.

5.     DRN's surveillance network is more capable than the human eye. DRN captures images of license plates caught in the view of its ReaperHD camera—even when the vehicles are tightly packed together in traffic, traveling at high speeds down the road, or parked innocuously in the owner's driveway. DRN's ReaperHD cameras are constantly scanning for license plates in their visual range—even utilizing night-vision technology to continue tracking vehicles when human eyes could not. Worse, because Defendant's cameras are mounted to moving vehicles, they are difficult to spot and nearly unavoidable.

6.     In fact, Defendant claims that it has amassed more than 20 billion historical scans of license plates or approximately over 70 scans—including time and GPS data—for each registered vehicle in the country.

7.     All the while, millions of guiltless and unsuspecting individuals are monitored and

CLASS ACTION COMPLAINT                              2

Exhibit 1
Page 2

tracked while going about their daily lives—going to work, picking up groceries, and visiting friends and family—without the slightest inkling that any of this is happening. These individuals are not suspects of any investigations, not part of any state or federal watchlists, and not subjects of any legitimate government surveillance programs. Nor do they have any notice that they are under constant surveillance by DRN's vast network. DRN's surveillance program is impudently indifferent to individuals' privacy and civil liberties and fails to give the public any meaningful warning about its conduct, in violation of California law.

8.      Plaintiff Mata is one of millions of individuals who has fallen victim to DRN's pervasive surveillance network. DRN tracked Mata's vehicle, thus gaining access to his home and work address and other sensitive information such as the time he typically leaves and comes home and where he likes to spend his free time. Defendant DRN has also amassed similar information on the putative Class members. This lawsuit seeks to put an end to DRN's portentous surveillance tactics and to hold the company accountable for disparaging the privacy rights of California citizens.

## PARTIES

9.      Plaintiff Guillermo Mata is a natural person and citizen of the State of California.

10.      Defendant Digital Recognition Network, Inc., is a corporation organized and existing under the laws of Delaware with its principal place of business located at 4150 International Plaza, Suite #800, Fort Worth, Texas 76109.

## JURISDICTION AND VENUE

11.      This Court has subject matter jurisdiction over this action pursuant to Article VI, Section 10 of the California Constitution.

12.      This Court has personal jurisdiction over Defendant DRN because it has conducted and continues to conduct significant business within this State related to the conduct described in this Complaint, and caused significant effects in this State through the conduct described in this Complaint, both as to its activities within this State and elsewhere.

13.      Venue is proper in this Court under Cal. Code Civ. P. § 395(a) because Plaintiff has

CLASS ACTION COMPLAINT                                3

Exhibit 1
Page 3

designated San Diego Superior Court as the venue for this action.

## COMMON FACTUAL ALLEGATIONS

### I.   The California License Plate Recognition Law

14.   In 2016, the California legislature regulated and restrained the use of automatic license plate readers ("ALPR") and the sharing of data they capture, Cal. Civ. Code § 1798.90.5 *et seq.* In enacting the new ALPR law, the California legislature noted various privacy concerns about the use of this technology:

> The collection of a license plate number, location, and time stamp over multiple time points can identify not only a person's exact whereabouts but also their pattern of movement. Unlike other types of personal information that are covered by existing law, civilians are not always aware when their ALPR data is being collected. One does not even need to be driving to be subject to ALPR technology: A car parked on the side of the road can be scanned by an ALPR system. This bill will put in place minimal privacy protections by requiring the establishment of privacy and usage protection policies for ALPR operators and end users.[1]

15.   To achieve this goal, the ALPR law mandates that ALPR operators and end users, among other things, comply with three basic requirements:

i.   *The Security Requirement:* ALPR operators and end users must "maintain reasonable security procedures and practices, including operational, administrative, technical, and physical safeguards, to protect ALPR information from unauthorized access, destruction, use, modification, or disclosure." Cal Civ. Code § 1798.90.51(a); *id.* §1798.90.53(a).

ii.   *The Privacy Requirement:* ALPR operators and end users must "implement a usage and privacy policy in order to ensure that the collection, use, maintenance, sharing, and dissemination of ALPR information is consistent with respect for individuals' privacy and civil liberties." *Id.* § 1798.90.51(b)(1); *id.* § 1798.90.53(b)(1).

iii.   *The Notice Requirement:* ALPR operators and end users must post a usage and privacy policy "conspicuously" on their website and include the following information:

---

[1]   Sen. Rules Com., Off. of Sen. Floor Analyses, Rep. on Sen. Bill No. 34 ( 2015-2016 Reg.) Sept. 03, 2015, p. 5, *available at* https://bit.ly/3hSvw2t.

CLASS ACTION COMPLAINT                              4

Exhibit 1
Page 4

(a)    The authorized purposes for using the ALPR system and collecting ALPR information.

(b)    A description of the job title or other designation of the employees and independent contractors who are authorized to use or access the ALPR system, or to collect ALPR information. The policy shall identify the training requirements necessary for those authorized employees and independent contractors.

(c)    A description of how the ALPR system will be monitored to ensure the security of the information and compliance with applicable privacy laws.

(d)    The purposes of, process for, and restrictions on, the sale, sharing, or transfer of ALPR information to other persons.

(e)    The title of the official custodian, or owner, of the ALPR system responsible for implementing this section.

(f)    A description of the reasonable measures that will be used to ensure the accuracy of ALPR information and correct data errors.

(g)    The length of time ALPR information will be retained, and the process the ALPR operator will utilize to determine if and when to destroy retained ALPR information. *Id.* § 1798.90.51(b)(1); *id.* § 1798.90.53(b)(1).

16.    Furthermore, ALPR operators have two additional requirements to ensure consumer privacy and unauthorized access.

i.    *The Audit Requirement.* ALPR operators must maintain a record of the times their ALPR system is accessed, whether by the operators, its employees, or an end user. *Id.* § 1798.90.52(a). The audit trail must note the date and time of the query, the data that was queried, who queried it, and the purpose of the query. *Id.* § 1798.90.52(a)(1)-(4).

ii.    *The Proper Use Requirement.* ALPR operators must also "require that ALPR information only be used for the authorized purposes described in the usage and privacy policy . . ." *Id.* §1798.90.52(b).

17.    An individual harmed by this statute may bring a civil suit and recover 1) actual

CLASS ACTION COMPLAINT                          5

Exhibit 1
Page 5

damages, but not less than liquidated damages in the amount of $2,500, 2) punitive damages upon proof of willful or reckless disregard of the law, 3) reasonable attorney's fees and other litigation costs reasonably incurred, and 4) other preliminary and equitable relief as the court determines to be appropriate. *Id.* §1798.90.54(b).

**II.    DRN Collects ALPR Data from Unsuspecting California Residents**

18.    Defendant DRN seeks to provide its customers real-time vehicle location data. DRN accomplishes this through its use of automatic license plate reader technology. DRN claims that it has amassed data on over 20 *billion* vehicle sightings.

19.    Indeed, DRN uses vehicle-mounted ALPR cameras that take photographs of vehicles and their license plate numbers. *See* Figure 1. DRN also records the camera's location including the time and date of the photograph. *See* Figure 2.



**(Figure 1)**



**(Figure 2)**

CLASS ACTION COMPLAINT                                      6

Exhibit 1
Page 6

20.     DRN uses ALPR camera hardware it calls ReaperHD. ReaperHD conducts "high-volume license plate scanning" capable of "multi-lane image capture" that performs "at all times of day—or night." *See* Figure 3.



Our ReaperHD LPR Cameras are built for high-accuracy, high-volume license plate scanning.

**POWER-OVER-ETHERNET INSTALLATION**
Deploy cameras quickly and easily with just a single cable so you can start scanning immediately.

**HIGH-DEFINITION IMAGING**
Capture high-quality photos with our new, advanced sensor and onboard image buffering.

**OUTDOOR-RATED CONSTRUCTION**
The ReaperHD is IP67 and NMEA4 rated to operate in extreme temperature ranges and in all climates.

**MULTI-LANE IMAGE CAPTURE**
With a 16-foot horizontal field of view you can more efficiently scan more cars to find assignments.

**ENHANCED NIGHT-TIME IMAGING**
The ReaperHD comes with dual infrared and color lenses so you can scan at all times of day – or night.

**HIGH-SPEED IMAGE PROCESSING**
Never miss a vehicle with a camera that is constantly working as hard as you do to capture plate images.

**(Figure 3)**

21.     DRN's automatic license plate readers deployed throughout the nation, including the state of California, pose serious concerns to individuals. License plate data, together with date/time, and GPS coordinates, can reveal a vehicle's historical travel. After applying algorithms to the data, such information can reveal an individual's travel patterns and even predict where an individual may be located in the future. Indeed, DRN states that "our platform can build a full, historical story on a vehicle and owner. This can produce a better address faster than using public records only."

22.     DRN is not shy about the information it derives from ALPR data. According to its website "DRN's realternative data – license plate recognition data paired with our powerful, exclusive analytics platform – helps build the full vehicle stories our users need to solve their portfolio management, collections, recovery and fraud challenges."

23.     DRN pairs its ALPR technology with a number of other systems that magnify the invasiveness and value of the collected information. DRN employs "Vehicle Tagging," a system that allows clients to target communications to individual drivers, "Picture Proof" a system that captures vehicle photos from multiple angles to display how a vehicle is being used, "Radius

CLASS ACTION COMPLAINT                              7

Exhibit 1
Page 7

Response," a system that notifies clients if a particular vehicle is sighted outside of particular areas, and "Active Duty Alerts," a system that monitors drivers' active duty military status, notifying DRN's clients the moment a servicemembers' status changes from active duty so their vehicles may be repossessed.

24.    DRN's so-called vehicle "stories" that contain location and time data reveal sensitive information that individuals may not wish to share (or allow anyone to monetize). To illustrate, DRN can reveal whether an individual has recently visited an abortion clinic, a cancer treatment clinic, a religious center, or an LGBT community center, thus giving insight into one's health and medical history, religious beliefs, and sexual orientation. DRN can even potentially reveal whether an individual is actively searching for jobs if an individual's vehicle was found outside a competing company or at a recruiting agency.

25.    DRN's database can also endanger some individuals when in the wrong hands. For instance, DRN's license plate database can reveal an individual's location and their travel patterns, which an abusive spouse or ex can obtain and use to find the location of an individual—even if they participate in an address confidentiality program. DRN's predictive technology allows a malicious individual to predict exactly where their victim could be found at a certain point in time.

26.    Worst of all, nearly every California resident is a victim of DRN's invasive practices. DRN gathers ALPR data indiscriminately—collecting information on millions of ordinary people who are neither suspects of any criminal investigations nor members of any watch list. That means ordinary citizens' whereabouts are continuously being collected and analyzed by an unknown third party.

27.    Victims of DRN's license plate scanning do not know they are part of its widespread and unchecked surveillance network. Indeed, California residents, and the public in general, are completely unaware of DRN's existence—let alone its clandestine operation of patrolling streets with unmarked vehicles equipped with ALPR technology.

28.    The purpose of DRN's product is obvious: to collect license plate data together with date/time and GPS coordinates, tracking individuals as they go on about their day and, most

CLASS ACTION COMPLAINT                              8

Exhibit 1
Page 8

importantly, to monetize this data. In its efforts to build an expansive (and lucrative) database of personal location information, DRN puts its own profits over the individual privacy and civil liberties of its unsuspecting subjects.

29.     Currently, DRN claims to have over 1,000 clients who rely on and pay for DRN data. Those clients belong to various industries such as lending, collections, and insurance, among others.

30.     While DRN maintains a written "privacy policy" on its website in order to maintain the appearance of adhering to the law, the company's actual policies reflect little concern for individuals' privacy and civil liberties. The company's written policy, for instance, describes the authorized purposes for using the ALPR system and collecting ALPR information (which the law requires), indicating that customers may use its ALPR system "to identify or ascertain the location of a specific vehicle under circumstances when there is a legitimate commercial interest." But this vague and undefined purpose does little to adequately disclose the circumstances in which DRN authorizes the collection and use of its ALPR system, let alone to ensure that those practices are consistent with respect for individuals' privacy and civil liberties, as the law requires. Cal. Civ. Code §§ 1798.90.51(b)(1) and 1798.90.53(b)(1). In fact, DRN doesn't even believe individuals have privacy rights in the tracking of their vehicles in the first place. On its website, DRN states that there is "not a privacy concern related to the data [it] collect[s]."

31.     Moreover, DRN does not even require its customers to stay within the bounds of its broadly defined usage policy, as the law also requires. *Id.* § 1798.90.52(b). Despite only authorizing the use of its ALPR system for the purpose of "identify[ing] or ascertain[ing] the location of a specific vehicle," DRN encourages customers to use its database to track *individuals* and not just the location of vehicles.

32.     For example, DRN touts that its database can be used to verify addresses for use in mailing campaigns: "[u]sing DRN to validate/invalidate addresses for mailing campaigns can provide even larger cost saving benefits." This application has nothing to do with locating or identifying a vehicle.

CLASS ACTION COMPLAINT                              9

Exhibit 1
Page 9

33.     DRN's database also allows credit card companies and other lenders of unsecured debt to keep tabs on their customers. According to DRN, "[n]ow, we're showing that [License Plate Recognition technology] can be just as effective in the unsecured debt market, which is primarily credit cards, personal loans and student loans." DRN hopes that its ALPR database will help "find debtors so they can collect on the debt or, in some cases, start the timeline to file suit."

34.     In short, DRN's written policy does little to ensure that the collection, use, maintenance, sharing, and dissemination of ALPR information is consistent with respect for individuals' privacy and civil liberties. The real purpose of DRN's "privacy policy" is to pay lip service to privacy laws without having any intention of actually complying with them.

35.     Further, aside from publishing a superficial "privacy policy" to its website, DRN takes no additional steps to ensure that the collection, use, maintenance, sharing, and dissemination of its ALPR information is consistent with respect for individuals' privacy and civil liberties. Instead, the company offers the disclaimer that it "is not aware of any individual privacy interest applicable to the anonymous LPR data contained in the system," and suggests that it maintains usage and periodic audit logs only "because the company considers LPR data a valuable asset of the company." However, the company's advertised uses of the data suggests that it is anything but anonymous. In any case, DRN cannot rely on this self-serving attempt to recharacterize the highly sensitive nature of ALPR data, in contradiction of findings by the California Supreme Court[2] and the State Legislature, in order to circumvent its duties under the law.

36.     Finally, DRN fails to make its collection and usage practices available to the public in any meaningful way. The company has not taken any steps to inform the subjects of its surveillance about its practices, much less to make the public generally aware of its surveillance program. At most, DRN has published an indifferent privacy policy to its website, but as explained above, the policy hardly informs the public about the collection and use of their ALPR data, and the

_____

[2]     *See Am. C.L. Union Found. v. Superior Ct.* (2017) 3 Cal. 5th 1032, 1044 [221 Cal.Rptr.3d 832, 400 P.3d 432].

CLASS ACTION COMPLAINT                              10

Exhibit 1
Page 10

policy itself is not posted conspicuously on DRN's website, as the law requires. Cal. Civ. Code § 1798.90.51(b)(1). Even if a California consumer were to somehow discover that DRN collected their license plate data and were to visit DRN's website, DRN hides its usage and privacy policy at the bottom of its website in small dark font that is hardly visible against a dark background.

### FACTS SPECIFIC TO PLAINTIFF MATA

37.    Plaintiff Mata values his privacy and takes various measures to protect against revealing his personal information.

38.    Unbeknownst to Mata, DRN's ALPR cameras captured Mata's license plate numbers and his vehicle's location. The collection of his vehicle's location and his license plate data allowed DRN to identify Mata's former employer, where he spends his time after work, the school his family member attended, and the stores him and his family members frequent.

39.    At the time of DRN's collection of Mata's license plate data and location information, Mata was not aware of DRN's conduct, and, as such, Mata could not have found and reviewed DRN's usage and privacy policy.

40.    Furthermore, Mata is concerned to whom and for what reasons DRN may have disclosed his sensitive license plate data together with his vehicle's location. Worst of all, Mata is concerned how this information can be misused.

### CLASS ACTION ALLEGATIONS

41.    **Class Definition**: Plaintiff Guillermo Mata brings this action pursuant to the California Code of Civil Procedure § 382 on behalf of himself and a Class of similarly situated individuals defined as follows:

> All persons in the State of California whose license plate data was collected by Defendant using an automatic license plate reader.

Excluded from the Class are: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or their parents have a controlling interest and its officers and directors; (3) persons who properly execute and file a timely request for exclusion from

CLASS ACTION COMPLAINT                                11

Exhibit 1
Page 11

the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

42. **Numerosity**: The exact number of Class members is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant has photographed the license plates and time-stamped geolocation data of millions of consumers who fall into the definition of the Class. Class members can be identified through Defendant's records.

43. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the putative Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

    (a)    Whether Defendant complies with the requirements set forth by Cal. Civ. Code § 1798.90.51;

    (b)    Whether Defendant complies with the requirements set forth by Cal. Civ. Code § 1798.90.52; and

    (c)    Whether Defendant complies with the requirements set forth in Cal. Civ. Code § 1798.90.53.

44. **Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff's claims are representative of the claims of the other members of the Class. That is, Plaintiff and the Class members sustained damages as a result of Defendant's conduct. Plaintiff also has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so. Neither Plaintiff nor her counsel has any interest adverse to the Class.

45. **Predominance and Superiority**: Class proceedings are superior to all other

CLASS ACTION COMPLAINT             12

Exhibit 1
Page 12

available methods for the fair and efficient adjudication of this controversy, as joinder of all members of the Class is impracticable. Individual litigation would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

46. Plaintiff reserves the right to revise the foregoing "Class Allegations" and "Class Definition" based on facts learned through additional investigation and in discovery.

## FIRST CAUSE OF ACTION
### Violation of Cal. Civ. Code § 1798.90.5 *et seq.*
### (On behalf of Plaintiff and the Class)

47. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

48. Plaintiff Mata brings this count against DRN individually and on behalf of the class.

49. Defendant DRN operates an ALPR system that collects photographs of license plate numbers, together with the location, time, and date of the Plaintiff's and the putative Class's vehicles.

50. On information and belief, DRN is not a transportation agency acting subject to Cal. Streets & Highways Code § 31490.

51. Accordingly, Defendant is an "ALPR operator" under Cal. Civ. Code § 1798.90.5(c) because it operates an ALPR system.

52. In addition (or in the alternative), Defendant is an "ALPR end-user" under Cal. Civ. Code § 1798.90.5(a) because it accesses or uses an ALPR system.

53. California law prohibits DRN from accessing or using ALPR information unless it complies with the Notice, Privacy, Security, Audit, and Proper-Use Requirements defined above.

54. On information and belief, Defendant deliberately collected Plaintiff's and the putative Class's ALPR information and disclosed that information to its 1,000 clients allowing them to identify locations visited by Plaintiff and each putative Class member's vehicles.

CLASS ACTION COMPLAINT                              13

Exhibit 1
Page 13

55.     Defendant knew that ALPR data was protected under California law and that it had certain obligations under California's ALPR statute. Upon information and belief, Defendant knowingly collected, used, and shared Plaintiff's and the Class's ALPR data in violation of the law (and allowed, if not encouraged, its customers to do the same), while impersonating compliance on its website.

56.     Defendant's conduct violates the Notice Requirement under Cal. Civ. Code §§ 1798.90.51(b)(1) & 53(b)(1) because the company does not make a meaningful usage and/or privacy policy available to the public, nor does it conspicuously post any information about usage and/or privacy on its website.

57.     Defendant's conduct violates the Privacy Requirement under §§ 1798.90.51(b)(1) & 53(b)(1) because it does not implement a meaningful usage and privacy policy in order to ensure that its collection, use, maintenance, sharing, and dissemination of ALPR information is consistent with respect for individuals' privacy and civil liberties.

58.     Defendant's conduct violates the Security Requirement under §§ 1798.90.51(a) & 53(a) because it expressly disclaims the highly sensitive nature and serious privacy implications of its ALPR data, and as a result fails to conduct the security procedures and practices reasonably necessary to protect such sensitive information from unauthorized access, destruction, use, modification, or disclosure.

59.     Defendant's conduct violates the Proper-Use Requirement under § 1798.90.52(b) because it allows, and indeed encourages its customers to use its ALPR system for the unauthorized purpose of tracking and locating individuals.

60.     Plaintiff and the Class have been harmed by Defendant's conduct because their private and sensitive personal information has been improperly collected and used without their notice or consent.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Guillermo Mata, individually and on behalf of the Class, prays for the following relief:

CLASS ACTION COMPLAINT                                    14

Exhibit 1
Page 14

(a)    An order certifying the Class as defined above, appointing Plaintiff Mata as the representative of the Class, and appointing his counsel as Class Counsel;

(b)    An order declaring that Defendant's actions, as set out above, violate Cal. Civ. Code § 1798.90.5 *et seq.*

(c)    An injunction requiring Defendant to cease all unlawful activities;

(d)    An award of liquidated damages, punitive damages, costs, and attorneys' fees;

(e)    Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully submitted,

**GUILLERMO MATA**, individually and on behalf of all others similarly situated,

Dated: May 26, 2021

By: /s/ Lily E. Hough
*One of Plaintiff's Attorneys*

Rafey Balabanian (SBN 315962)
rbalabanian@edelson.com
Lily Hough (SBN 315277)
lhough@edelson.com
Aaron Lawson (SBN 319306)
alawson@edelson.com
EDELSON PC
150 California Street, 18th Floor
San Francisco, California 94111
Tel: 415.212.9300
Fax: 415.373.9435

*Counsel for Plaintiff and the Putative Class*

CLASS ACTION COMPLAINT                                    15

Exhibit 1
Page 15